No. 46,099

Donald E. Lord, *Appellee,* v. State Automobile and Casualty Underwriters, Des Moines, Iowa, *Appellant.*

(491 P. 2d 917)

Opinion filed December 11, 1971.

*J. Eugene Balloun,* of Turner and Balloun, Great Bend, argued the cause, and *Thomas C. Kelley,* of the same firm, was with him on the brief for the appellant.

*Ralph J. Thorne,* of Rauh, Thorne and Robinson, Hutchinson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This is an action on an insurance policy by the insured against his insurance company for the value of his insured truck, which was totally destroyed in an accident on July 18, 1968.

The case was tried to a jury which found in favor of the plaintiff

and fixed the value of the truck at $8,500 at the time of its destruction. The $250 deductible clause was not applicable because the value found exceeded the policy limit and judgment was therefore rendered for the full limit of $8,000.

At a post trial hearing the court determined that plaintiff should be awarded a reasonable attorney fee under K. S. A. 1969 (now 1971) Supp. 40-256, and fixed the amount at $3,000.

The defendant insurance company appeals, specifying two trial errors and complaining about the award of attorney fees. Plaintiff-appellee asks that, if we affirm, we make an additional allowance for the services of his attorney on this appeal.

From the time of the accident in July until December 2, 1968, plaintiff engaged in a series of negotiations with a claims adjuster employed by the company. More concerning these negotiations will be related later, but they included numerous conversations with the adjuster and the securing by plaintiff and furnishing to the company an appraisal of the truck at $8,500 to $9,000. On the latter date an agreement was reached whereby the company's draft was issued in the amount of $7,250, in return for plaintiff's receipt and a release acknowledging that the sum was "in full settlement and discharge" of plaintiff's claim for the loss of the truck.

The company stopped payment on the draft, for reasons to be discussed, thereby precipitating this lawsuit. In its answer it set up the agreement as a defense, and paid $7,250 into court. On motion of plaintiff this portion of the answer was stricken, and defendant's offers of testimony concerning the agreement were repeatedly rejected during the trial. The trial court's ruling on the motion and its exclusion of all reference to the agreement and release together form the basis for the company's first claim of error.

The trial court's theory was that the abortive agreement was an offer of compromise, saying on one occasion, "There will be no evidence of negotiations or no hint of negotiations;" and on another, "Yes, it smacks of negotiations and is inadmissible and your offer will not be allowed." The court was applying the well established rule that an offer to compromise a difference is not admissible in evidence unless such offer contains an admission of fact. *O'Bryan v. Home-Stake Production Co.,* 195 Kan. 213, 403 P. 2d 978; *T. M. Deal Lbr. Co. v. Jones,* 137 Kan. 480, 21 P. 2d 933; *Kaull v. Blacker,* 107 Kan. 578, 193 Pac. 182.

Plaintiff's willingness to accept $7,250 to settle a claim under a

policy limited to $8,000 cannot by itself be said to indicate any admission of fact. At trial and in its offer of proof the company sought to show that in the course of the settlement negotiations plaintiff "admitted" or "agreed" that the truck was worth only $7,500. This theory of admissibility appears to have been abandoned in this court. Here the company bottoms its entire argument on the doctrine of equitable estoppel. Plaintiff, it claims, did not make a full disclosure to it before entering into the settlement agreement. Whatever the merit of appellant's position—and in the light of the facts set out in our subsequent discussion of attorney fees there may be very little—it was never presented to the trial court, either by pleading or so far as the record shows by argument. We conclude that the trial court did not commit reversible error by preventing the settlement negotiations from being considered by the jury.

The truck in question was, at the time of its destruction, leased to and operated by Friesen Truck Line, Inc. The defendant offered the opinion testimony of the manager of the line, Abe Friesen, as to the value of the truck. Appellant's second allegation of error is the trial court's refusal to permit him to express such opinion.

The first attempt to elicit the opinion came after the witness had given his background in the trucking business:

"Q. In the course of your business of running a truck line do you have occasion to purchase trucks from time to time?

"A. Yes, we do.

"Q. And in purchasing these trucks do you have occasion to place some monetary value on these trucks?

"A. *I am not so much interested in buying used trucks; I buy new trucks.*

"Q. You buy new trucks when you buy?

"A. Right.

"Q. Have you had occasion to value used trucks during the course of your business?

"A. I don't go around truck lots and value trucks.

"Q. But you are generally familiar with the value of the trucks to you in your business?

"A. *A used truck might be worth less money to me than it would be to somebody else because I am not interested in used trucks.*

"Q. But being in the trucking business you are familiar with used trucks and their value?

"A. *Fairly so.*

.   .   .   .   .   .   .   .   .   .   .   .

"Q. On the basis of your experience in the trucking industry and on the basis of your familiarity with this truck, do you have an opinion as to its value at the time it was destroyed?

"Mr. Thorne: *To which we object, the witness has not been shown to be qualified.*" (Emphasis added.)

The objection was sustained and the appellant made a further effort to qualify the witness, culminating in the following:

"Q. During the course of this business experience, how many trucks would you say you have had?

"A. Probably forty.

"Q. And you purchase some of these, have you not?

"A. Purchased them all.

"Q. So you have purchased 40 trucks for your business. What about leasing trucks, how many have you leased?

"A. Probably three.

"Q. And these were some to supplement your regular fleet of trucks, is that right?

"A. Yes.

"Q. When you have had these forty trucks, when you are finished with them, do you take them down and trade them in on *a new truck?*

"A. Right.

"Q. And you have been doing this for 20 years?

"A. Right.

"Q. And you are still engaged in that business?

"A. Yes.

"Q. So based upon your total experience in the trucking industry, do you have an opinion as to the value of the truck in question here?

"A. Like I said before, *that truck probably wouldn't be worth as much to me as it would be to somebody else.*

"Mr. Thorne: Your Honor, he said he didn't go around to truck places and value trucks and he doesn't know the value of trucks and it would be worth less to him than to somebody else, and we make the same objection.

"The Court: The objection is sustained, he has not been qualified as an expert witness." (Emphasis added.)

Generally, whether a witness is qualified to render an opinion is a matter to be determined within the sound discretion of the trial judge. *Hildebrand v. Mueller,* 202 Kan. 506, Syl. ¶ 1, 449 P. 2d 587; *Howard v. Stoughton,* 199 Kan. 787, Syl. ¶ 2, 433 P. 2d 567; *Taylor v. Maxwell,* 197 Kan. 509, Syl. ¶ 2, 419 P. 2d 822. The self-effacing answers of the witness in the face of counsel's earnest efforts to qualify him surely put the expertise of the witness in serious doubt. We cannot say the trial court abused its judicial discretion in finding the witness was not an expert on the market value of used trucks.

On this point, as on the previous one, appellant shifts its theories on reaching this court. Although the effort below was clearly to qualify the witness as an expert, before us appellant urges that the witness should have been allowed to express his opinion be-

cause as a lessee he "stood in the shoes" of the owner. No cases are cited in support of this proposition. Appellant does cite cases where "real value" is an issue because "market value" cannot be shown. Under those circumstances persons other than the owner or an expert have been held competent to testify where they were shown to be familiar with such "real value." (E. g., *Hollinger v. Railway Co.*, 94 Kan. 316, 146 Pac. 1034.) Even if this theory for admissibility were available to the company when urged for the first time in this court, here there *is* a market value, and in addition, the witness didn't really claim to any particular familiarity with the value of the truck.

Finally, appellant complains most bitterly about the allowance of an attorney fee. No attack is made on the *amount* allowed but the company vigorously contests *any* obligation on the ground that it did not refuse to pay the loss "without just cause or excuse," the statutory ground for an allowance under K. S. A. 40-256, as amended.

To evaluate the company's claim that it *had* just cause to refuse to pay we must look at the situation as it developed from the loss in July, 1968, to the filing of this suit on December 19, 1968.

Title to the vehicle was in the name of plaintiff, with a lien shown in favor of General Motors Acceptance Corp. (G. M. A. C.). Friesen was known to be a lessee.

While plaintiff was negotiating with the company's adjuster for a settlement of his claim he received a letter dated October 2, 1968, from a Hutchinson attorney representing the estate of George W. Ballard, the deceased driver of the truck. This letter asserted a claim against plaintiff on behalf of Ballard's heirs under an alleged oral contract to buy the truck. Plaintiff promptly consulted his attorney, who examined Friesen's records, discussed the matter with counsel for the Ballard heirs, and advised plaintiff that he thought there was no merit to the claim.

Negotiations with the insurance company proceeded apace, with plaintiff securing and furnishing a statement from the company which sold him the truck valuing it at $8,500 to $9,000, mentioned above. Eventually an agreement was reached producing the release of December 2, 1968, and the draft for $7,250. The draft itself is not in the record, but we gather it was payable jointly to plaintiff, G. M. A. C. and Friesen.

Exactly when the insurance company first became aware of the purported claim of the Ballard heirs does not appear in the record,

although it would seem to be important to much of appellant's case. The record does contain the uncontroverted testimony of plaintiff's counsel concerning his dealings with the company. His testimony would indicate that the company knew of the Ballard claim in early October, 1968. Refusal to pay was based on the existence of the Ballard claim in three separate telephone conversations in which he pursued the matter up the company's chain of command. The first was with the company's adjuster in Wichita on October 6, the second with an agent in Denver on the same day, and the last with the home office in Des Moines, on October 7. The home office, according to this testimony, on October 7 referred the whole matter to counsel representing the company in this suit and agreed to have them call plaintiff's attorney.

If correct, these dates render any "nondisclosure" by plaintiff of the Ballard claim irrelevant, and demolish whatever validity there might otherwise be to appellant's assertion of equitable estoppel mentioned above.

The October dates for these conversations seem to us implausible. It does not seem likely that the company's adjuster, against this background of controversy and in the face of the adamance of his employers, all of some two month's standing, would have proceeded to negotiate the agreement of December 2. It seems far more likely that the conversations took place in early December, immediately after payment was stopped on the first draft. We would attribute the appearance of the October dates in the record, repeated though they are, to transcribing errors on the part of the court reporter, typographical errors on the part of the printer, or to the faulty memory of the witness. We do note that there was no effort on the part of appellant's counsel to clarify or explain this apparent discrepancy either below or in this court. If the dates *are* correct the company's conduct for the following two months, consisting of silence and the December 2 agreement, is utterly incomprehensible.

However, in the view we take of the case the dates of the conversations are really immaterial. Whenever they may have occurred, the next step was a conversation between plaintiff's counsel and defendant's on December 16, 1968. The matter of the Ballard claim was then discussed, and plaintiff's claim for the full $8,000

coverage under the policy was asserted. That day the company's counsel put themselves on record as follows:

"16 December 1968

288-68-6-2

Ralph J. Thorne
Attorney at Law
315 West 1st Avenue
Hutchinson, Kansas 67501
Re: Lord v. Ballard
Dear Ralph:

State Auto has retained us in the above captioned matter with regard to the settlement draft covering the damage to the tractor unit.

As you know, Leander Hamilton now contends George W. Ballard was purchasing the tractor, and hence his name should be on any settlement drafts. For this reason the original draft forwarded No. 615657 has a stop payment order on the same. Until we can get some sort of release from Hamilton with regard to the Ballard Estate, we cannot honor the draft. You might check with Leander, and see if something can be worked out at your end; if not, the suit naming all parties including State Auto would find us responding by simply tendering the money into Court—allowing the court to determine who gets what.

Yours truly,

Turner & Balloun, Chartered

By_____

Lee Turner

LT/lfs
cc: I. H. McDonald—Des Moines, Iowa"

The impact of this letter was a final refusal to pay unless plaintiff could first settle the Ballard claim and furnish proof of such settlement—whatever the merits of the Ballard claim. The company's position was solidified as "settle with them, or sue us." Two days later plaintiff took the company and its counsel at their word and instituted this action.

As we have often said, whether attorney fees are to be allowed "must depend on the facts and circumstances of each particular case," and they can be allowed "only where the insurer refuses 'without just cause or excuse' to pay in accordance with the terms of the policy." (*Parker v. Continental Casualty Co.*, 191 Kan. 674, 684, 383 P. 2d 937. And see cases cited therein.)

Was payment here refused with *just cause or excuse?* In considering a similar refusal to pay an insurance claim we recently framed the test as follows:

"The question is, how did the matter appear . . . [to the insurance company] as judged by a reasonable and prudent man seeking to determine

the facts of the controversy which it was his duty in good faith to investigate." (*Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P. 2d 756.)

We thus again recognized that an insurance company is not required to pay a claim while a bona fide question of liability exists. But at the same time we recognized that the company has a duty to make a good faith investigation of the facts before finally refusing to pay. We have here absolutely no effort, either on the part of the insurance company or its counsel, to investigate (much less "in good faith") the merits of the Ballard claim prior to the final refusal to pay. Instead, the insurance company put the entire burden on its insured, taking the somewhat lofty position that investigation, evaluation, and determination of the claim was not *its* responsibility. That the Ballard claim might be based on erroneous facts, or be a "nuisance" claim, or be wholly frivolous was none of *its* concern; *it* would not deign even to inquire. In short, it did not know and did not care whether its "cause or excuse" for refusing to pay was "just."

Subsequent events provided it with further edification: The company paid $7,250 (not $8,000) into court and interpleaded the various Ballard heirs, as well as G. M. A. C. The lien of G. M. A. C. was eventually paid, but the Ballard heirs were in due course dismissed by default (although one group asked for additional time to plead before defaulting). That there was no merit to the Ballard claim could, we believe, have been ascertained by the company had it fulfilled its duty to investigate in good faith; such was the conclusion reached by plaintiff's counsel after his brief investigation.

Independent counsel (testifying mainly as to the value of the services of plaintiff's counsel) responded on cross-examination by the company that, given the record title present here and with knowledge of the purported claim of the Ballards, he would have advised payment to plaintiff in return for an agreement to indemnify the company against any liability on such claim. As to the impact of the claim letter itself he said, "I would completely ignore it until I have some kind of a service of legal action taken."

We therefore agree with the trial court's conclusion that when it issued its ultimatum of December 16, 1968, refusing to pay, the company had no "just cause or excuse" for such refusal. The allowance of an attorney fee to the insured plaintiff was therefore proper.

In view of our conclusions, we reach appellee's request for an additional fee on appeal, now required by K. S. A. 1971 Supp. 40-256

as a result of its 1967 amendment. A reasonable fee for such services will be fixed by order and taxed as part of the costs in this court.

The judgment is affirmed.

APPROVED BY THE COURT.

O'CONNOR and PRAGER, JJ., not participating.