No. 46,531

EUGENE BROWN, *Appellee,* v. CONTINENTAL CASUALTY COMPANY, *Appellant.*

(498 P. 2d 26)

Opinion filed June 10, 1972.

*Stephen Jones,* of the firm of Hershberger, Patterson & Jones, of Wichita, argued the cause, and *H. E. Jones,* of the same firm, was with him on the brief for the appellant.

*Gerald W. Scott,* of the firm of Blair, Matlack, Rogg, Foote & Lambdin, P. A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Eugene Brown, is a finish carpenter by trade, the term implying that he does—or did—interior finishing work, such as installing cabinets, doors, windows, paneling and other interior trim. He was also the insured in a health and accident insurance policy issued by the defendant insurance company, hereafter referred to as Continental, or defendant, under the terms of which policy he was entitled to certain benefits should he become permanently disabled from performing the duties of his occupation.

On August 23, 1969, Mr. Brown received injuries to his back in an automobile accident occurring near Grove, Oklahoma. Subsequently he filed a claim against Continental for benefits alleged to be due under the policy. The company denied liability and the present action was thereupon commenced to recover the monthly benefits due and to become due under the policy. By stipulation the cause was submitted to a jury upon special questions designed to determine the periods, if any, of plaintiff's disability. The jury answered the questions favorably to the plaintiff and judgment was entered thereon in the aggregate amount of the payments then due, plus interest. From this judgment Continental has appealed.

Several points are raised on appeal but the defendant's primary thrust centers on the meaning of total occupational disability and the proper interpretation of the policy provisions in such regard.

The policy issued to the plaintiff provides for payment of monthly disability benefits "When as the result of sickness . . . or as

the result of injury . . . the Insured is totally disabled and continuously prevented from performing each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training or experience . . . *provided, that for a period not to exceed the first 24 months of such disability the Insured shall be deemed totally disabled if he is unable to perform each and every duty pertaining to his occupation as the result of such injury or sickness.*" (Emphasis added.) In this appeal we are concerned only with the proviso.

In response to the special questions submitted to it, the jury found that plaintiff was totally disabled to perform his duties as a finish carpenter within the meaning of the policy for a period of twelve months preceding the date of its verdict, and the judgment entered by the court in favor of Mr. Brown was predicated on this finding.

The defendant's argument in the area of total disability is divided into two sections. First, it is contended that the trial court erred in submitting its instructions on total disability and second, it is said the jury's finding of total disability is not supported by the evidence.

Instruction No. 11 covers the subject of total disability and reads as follows:

"You are instructed that it will be your duty to determine from the evidence and the law as given you in these instructions whether or not the plaintiff has been so totally disabled as to be unable to perform his duties as a finish carpenter, and if he has been so totally disabled, the period or periods for which he is or has been so totally disabled. Your criterion for determining whether he is or was totally disabled to perform his duties as a finish carpenter is whether or not his disability was such as to render him substantially unable to perform in the usual and customary way a substantial and material portion of the duties of a finish carpenter."

We experience some difficulty in following Continental's argument that this particular instruction is erroneous as a matter of law. After conceding that in a majority of jurisdictions, at least, the phrase "total disability" as used in health and accident policies does not mean a condition of total helplessness, the defendant proceeds to assert that the trial court, in its instruction, "has substituted a definition of partial disability for the required definition of total disability in the policy provisions."

In our view this argument has little to recommend it. The test laid down in the instruction represents what we understand to be the predominant rule in this country, *i. e.,* that under total disability

clauses similar in material respects to the clause before us, total disability can be said to exist where the insured is unable to perform the material and substantial duties of his occupation in the normal and customary way. We find the rule stated in Couch on Insurance, 2d, § 53:67, in this language:

"A policy which relates disability to the inability to work at one's usual occupation does not require a total helplessness of the insured even though the policy be broadly drawn to require an inability to perform 'any and every duty.' To the contrary, it is sufficient that the insured cannot perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner. That is, it is ordinarily held that if the insured cannot perform substantially the normal tasks involved in his usual employment the insured has sustained a total disability."

This court has given expression to the same principle in *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 711, 366 P. 2d 219, where we said:

". . . An insured need not be absolutely helpless before he is entitled to the benefits for total and continuous disability. It is only necessary that the disability render him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. . . ."

In *Scharbach v. Continental Casualty Company*, 83 Idaho 589, 366 P. 2d 826, the policy of insurance provided for total disability payments if the insured was wholly and continuously disabled and prevented from engaging in "each and every duty" pertaining to his occupation. In an action to recover benefits due under the policy, the Supreme Court of Idaho had this to say:

"The test is whether the insured was by reason of his sickness prevented from doing all the substantial acts required of him in carrying on his occupation covered by the policy. . . ." (p. 596.)

A frequently cited affirmation of the rule is found in *Lorber v. Aetna Life Insurance Company*, 207 So. 2d 305 (Fla.), where the policy under consideration provided for disability payments where the insured was "unable to perform *every* duty pertaining to his occupation." In the course of its opinion, the Florida court stated:

". . . In accordance with the usual rule, a liberal construction is given to such provisions in order to protect the policyholder. There is almost unanimous authority for the interpretation of the provision quoted to provide that:

" 'If the insured is unable to perform his material duties pertaining to his usual and customary occupation in substantially the same manner as before, he may recover. If he is able to do substantially all the acts material to his business and there are only a few immaterial things which he cannot do, the

rule is otherwise, but if there is any material, important, or substantial act which he cannot fulfill, recovery must be allowed.' See Dennis v. Business Men's Assurance Company of America, La. 1965, 175 So. 2d 431; Struble v. Occidental Life Insurance Co. of California, 1963, 265 Minn. 26, 120 N. W. 2d 609; cases cited in IA, Appleman, Insurance Law and Practice, § 671, p. 601 note 5." (pp. 308, 309.)

In *Columbia Casualty Co. v. McHargue*, 246 Ky. 93, 54 S. W. 2d 617, the policy provided payments for accidental injuries which should wholly disable and prevent the insured from performing any and every duty pertaining to his occupation. In construing this provision, the Kentucky court said:

". . . If the insured was prevented from transacting any substantial, material, or important part of his business or doing or performing any substantial, material, or important thing or duty customarily done or performed in his occupation, he is totally disabled. . . ." (p. 95.)

The woods of legal precedent are full of like pronouncements, but the foregoing citations will suffice to make the point.

In support of its appellate position, Continental cites *Commercial Travelers v. Barnes*, 72 Kan. 293, 80 Pac. 1020, wherein this court was concerned with the construction of a disability policy which contained the words "any and every kind of business pertaining to his occupation." In the course of its opinion, the court indicated that "partial disability" would not suffice to permit recovery under the express terms of the policy. The language used by the court in that case must be considered against the factual background presented. It is important also to note that the final conclusion reached by the court in its opinion on rehearing (72 Kan. 306, 82 Pac. 1099) was that it could not be said that the jury's finding of disability was unsupported by the evidence. Viewed in such perspective, we do not consider the *Barnes* case as being in disagreement with our more recent pronouncement in *Wolfe*.

We perceive no reason to be critical of the trial court's language in defining the test to be used in determining total occupational disability within the framework of Continental's policy. The challenged instruction cannot be said to be erroneous as a matter of law, as the defendant asserts.

Secondly, we are obliged to reject the defendant's contention that the jury's finding of total disability, as the term has been defined herein, is unsupported by the evidence. The defendant itself introduced no evidence, being content to cross-examine the witnesses called by the opposition. Plaintiff's evidence, briefly sum-

marized, disclosed that Mr. Brown was self employed at the time of his accident, subcontracting finish carpenter work from other contractors; that he worked on every job himself, and employed one or more men to assist him; that they all worked together, as a team; that his work on each of his jobs required a great deal of lifting, the loading and unloading of boards, placing them on the saw, and cutting and putting them in place; and that power tools used, weighing up to 300 pounds, had to be moved daily. The evidence further showed that prior to his accident the plaintiff made a full hand but because of back injuries resulting from the accident he was no longer able to do the lifting and other heavy labor required of a finish carpenter, although he made numerous attempts to go back to that type of work; that he was required to hire more and more employees, but even so was unable to finish some of the jobs he contracted. Eventually the plaintiff had to acquire a partner to assist him in his work, and at the time of trial he had entirely ceased contracting jobs as a finish carpenter and was confining himself to supervisory endeavors only.

Dr. Eugene E. Kaufman, an orthopedic surgeon practicing in Wichita, attended the plaintiff subsequent to the accident. In his medical report accompanying the plaintiff's claim filed with Continental, Dr. Kaufman stated that plaintiff might do supervisory work but no heavy labor or carpenter work. Dr. Kaufman testified by deposition that he didn't think plaintiff would have any trouble doing light work but anything that involved a lot of lifting, bending, stooping, working in awkward positions and things like that would tend to aggravate his problems. Dr. G. E. Moots, who was licensed to practice osteopathy and surgery in Oklahoma and other states, and who owned his own hospital in Pryor, Oklahoma, testified in some detail concerning his examination of Mr. Brown and expressed the opinion that he was "totally disabled as concerns performing the duties of a finish carpenter."

The jury's finding of total disability, when tested by the standard heretofore discussed, is well within the limits of the evidence. There is substantial evidence that Mr. Brown made diligent efforts to engage in finish carpentry after his accident but that on each occasion his back gave way and his attempts ended in painful failure. He is to be commended for his efforts to continue in his trade—not faulted therefor. We have often said that where findings are supported by substantial competent evidence they will not be

set aside on appeal, and this well worn principle is appropriate to apply in this case. (See 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, §§ 495, 507.)

A second point raised by Continental relates to a policy provision that indemnity will not be paid for any period of disability during which the insured is not under the regular care and attendance of a currently licensed physician or surgeon. In this connection the trial court, instructed the jury that it was not necessary for an insured to continue to go regularly to a physician or surgeon after reaching such a condition of recovery that further medical attention would be of little or no use and would basically be futile. Defense counsel objected to use of the word "futile", suggesting that "static" would be a better term to employ. A similar objection was interposed to use of the word "futile" in an instruction on burden of proof and in one of the special questions. All objections appear to have been semantic in nature and of minor import.

The defendant now argues that use of the phrase "basically futile" invites a finding that treatment would be futile, and that repetitious use of the phrase unduly emphasized plaintiff's theory that "he was under medical treatment from March to September" (during which time plaintiff did not see a doctor). We believe these points are not properly here for review. In the first place they were not advanced as grounds of objection at the trial. K. S. A. 60-251 (*b*) provides in effect that no party may assign as error the giving of any instruction unless he objects thereto before the jury retires, stating the matter to which he objects and the grounds of his objection, unless the instruction be clearly erroneous.

The case law in this jurisdiction is to the same effect. In *Sanford v. Smith*, 196 Kan. 538, 413 P. 2d 95, this court held:

"A party may not assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection, unless the instruction is clearly erroneous." (Syl. ¶ 1.)

See, also, *Bott v. Wendler*, 203 Kan. 212, 223, 453 P. 2d 100.

The instruction given by the court is not clearly erroneous. It correctly states the law as laid down by this court in *Hodgson v. Mutual Benefit H. & A. Ass'n*, 153 Kan. 511, 112 P. 2d 121:

"Where the holder of an insurance policy is otherwise entitled to benefits therein provided for 'total permanent disability,' and the policy contains a provision requiring regular attendance of a physician, such provisions will

not be enforced where it is shown by competent and substantial evidence that such attendance would be futile and no helpful purpose would be served thereby." (Syl. ¶ 4.)

We might add that Dr. Kaufman testified he last saw plaintiff March 4, 1970, at which time he did not think medical treatment was going to help him a great deal or that there was much he could do for him. The jury found that further treatment would have been of slight use and basically futile, and this finding has not been challenged as lacking evidentiary support.

At the close of plaintiff's evidence, the defendant announced it would not offer any evidence. At this point the plaintiff moved for a directed verdict. The court reserved its ruling on the motion and submitted the matter to the tender mercies of the jury. After receiving the jury's special verdict in favor of the plaintiff, the trial court resurrected the motion and made certain rulings with respect thereto which, in effect, sustained the plaintiff's position. However, we think it is clear from the journal entry that judgment was actually entered on the jury's answers to the special questions submitted to it, and we find no reason to explore the various rulings made on the motion for directed verdict.

On plaintiff's application, the trial court made an allowance of attorney's fees under the provisions of K. S. A. 1971 Supp. 40-256, and this is alleged as error. The material portion of the statute reads:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs. . . ."

We have often said that whether fees are to be allowed under this statute depends on the facts and circumstances of each particular case and that attorney fees are allowable only where the insurer has refused without just cause or excuse to pay in accordance with the terms of its policy. (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 684, 383 P. 2d 937; *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 220, 440 P. 2d 944; *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 793, 457 P. 2d 34; *Lord v. State Automobile & Casualty Underwriters,* 208 Kan. 227, 491 P. 2d 917.)

Continental vigorously contends that its refusal to pay the plaintiff's claim was predicated on just cause and excuse. The trial

court concluded otherwise and we are not disposed to disturb its judgment in such respect.

At the hearing on plaintiff's application for allowance of fees, which was held outside the jury's presence, the trial court heard the testimony of two Continental employees, Melvin Stewart and Thomas Cox, the former being the company's adjuster who rejected the claim. Mr. Stewart's testimony was somewhat equivocal, but we believe it is clear that his rejection of the claim was based solely on Dr. Kaufman's medical report (made under date of 12-29-69) without attempting to make any further investigation or inquiry. The doctor's report shows the following:

"[P]atient not totally disabled while under my care partial disab 8-27-69 to May do supervisory work—no heavy labor—or carpenter work"

Mr. Stewart admitted that he knew Mr. Brown to be a carpenter by occupation and considered him as such when passing on his disability claim. He also acknowledged, after a good deal of quibbling, that if the doctor said a carpenter cannot do carpenter work he would be disabled under the occupational portion of the policy.

Mr. Cox, who was Stewart's immediate supervisor, testified in effect that subsequent to the present action being filed he reviewed the plaintiff's claim after receiving a telephone call, (apparently from one of its agents), and formed the opinion there were sufficient grounds for requesting a clarification of the conflicting statements given by Dr. Kaufman as to disability; and that he thought the adjuster acted too quickly in denying the claim without asking for further medical information. When asked what the words "not able to do carpenter work" meant to him, Mr. Cox responded that standing alone those words would mean that claimant was totally disabled as to his occupation.

This court, too, is of the opinion that plaintiff's claim was too hastily and peremptorily denied. Mr. Stewart acknowledged receiving calls both from Mr. Brown and from his counsel concerning the company's denial of the disability claim. Obviously these calls went unheeded, for it was stipulated that no one on behalf of Continental attempted to get any clarification from Dr. Kaufman.

The circumstances made known to Continental by Dr. Kaufman's report were of themselves such as to require more than a simple armchair perusal of the report; we believe they required a good-faith effort to secure additional medical information. Surely, in the eyes of the law, "just cause or excuse" signifies more than passive

inaction in the face of a medical report which, though it might be ambiguous, strongly suggests that an insured under an occupational disability policy, is wholly disabled from performing the functions of his occupation. In *Koch, Administratrix v. Prudential Ins. Co.*, 205 Kan. 561, 565, 470 P. 2d 756, we phrased the test which should be applied in these words:

". . . The question is, how did the matter appear . . . [to the insurance company] as judged by a reasonable and prudent man seeking to determine the facts of the controversy which it was his duty in good faith to investigate."

This passage was quoted with approval in the recent case of *Lord v. State Automobile & Casualty Underwriters*, supra, and in commenting on the citation we said:

"We thus again recognized that an insurance company is not required to pay a claim while a bonafide question of liability exists. But at the same time we recognized that the company has a duty to make a good faith investigation of the facts before finally refusing to pay. We have here absolutely no effort, either on the part of the insurance company or its counsel, to investigate (much less 'in good faith') the merits of the . . . claim prior to the final refusal to pay. . . ." (p. 234.)

We believe that under the circumstances confronting it, the defendant failed in its duty to conduct a good-faith investigation of the plaintiff's claim of disability. In our judgment, the trial court was justified in concluding that just cause or excuse did not exist and that a fee should be allowed.

The fee allowed was $3250. In arriving at that figure, the court gave consideration to the detailed time sheet prepared and introduced by plaintiff's counsel which showed the total hours spent in preparation and trial of the action. This computation did not include time spent in going over instructions or in oral argument on the final day of trial. Neither did it include services performed in connection with the hearing on defendant's motion for new trial.

We are unable to say the fee fixed by the court is excessive or unreasonable in view of the time spent, the amounts involved and the results attained. The reasonable value of attorney's fees rests within the sound judicial discretion of the trial judge who, as an expert in the area of attorney's fees, may draw upon his own knowledge and expertise in evaluating their worth. (*Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 676, 443 P. 2d 681; *Service v. Pyramid Life Ins. Co.*, supra.) We find no abuse of discretion so far as the fee is concerned.

In view of the present requirements of K. S. A. 1971 Supp. 40-256, a reasonable fee will be set for services performed on appeal to be taxed as costs in this court.

Finally, the defendant complains of an order requiring it to produce Messrs. Cox and Stewart at the trial. The record is quite scanty on this point but it reflects that both gentlemen, who lived in Kansas City, Mo., were listed as witnesses in the pretrial order —Cox as a witness for plaintiff and Stewart for the defendant.

It further appears from the record that plaintiff's counsel, Mr. Scott, was not advised that these gentlemen would not appear voluntarily until he received a call from Continental's attorney three or four days before trial that they would not respond to a subpoena. Mr. Cox, who was listed by the plaintiff as a witness, had previously advised plaintiff's counsel that he would attend the trial even though he did not have to come from out-of-state. It was only after Mr. Scott received the call from opposing counsel that he went before Judge Howard Kline, the administrative judge of the 18th Judicial District, and procured the order. Both Cox and Stewart were served with subpoenas after their arrival in Wichita, and were tendered mileage and witness fees.

The defendant admits in its brief "that the court could order this action under its contempt power" but submits that it was an abuse of discretion to make the order "at the trial's beginning." We find no abuse of judicial discretion. The witnesses were corporate employees whom the plaintiff had good reason to expect would be produced at the trial. Obviously it was too late to depose them when plaintiff first learned they would not attend.

Moreover, the trial court limited their testimony to the question of allowance of attorney's fees and neither witness testified before the jury. The record reflects that defense counsel stated before the court that he had no objection to their testifying "if it is not before the jury" although he objected to "their being here in the first place."

We are cited to no authority to support defendant's claim of prejudicial error on this point, and we know of none.

The judgment of the court below is affirmed.