No. 49,765

EDITH M. BROWN, by HOMER BROWN, Her Guardian and Conservator, *Appellant and Cross-Appellee,* v. COMBINED INSURANCE COMPANY OF AMERICA, a Corporation, *Appellee and Cross-Appellant.*

(597 P.2d 1080)

Opinion filed July 14, 1979.

*Eldon L. Meigs,* of Pratt, argued the cause and was on the brief for the appellant and cross-appellee.

*Bill Dunn,* of Prairie Village, argued the cause and was on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

Holmes, J.: This is an appeal by Edith Brown, plaintiff-ap-

pellant, from an order of the district court denying her an allowance of attorney fees under K.S.A. 40-256. Plaintiff was successful in the trial court in an action against Combined Insurance Company of America to recover disability insurance payments under a group policy issued by the defendant. After a jury verdict in her favor, appellant moved for the allowance of attorney fees which was denied by the trial court. This appeal followed. Defendant insurance company has cross-appealed from that part of the judgment of the trial court which established the date of the plaintiff's total disability. Under the terms of the policy, the date of disability controls the amount of certain payments to be received by the plaintiff.

Appellant was employed as a teller by The Peoples Bank of Pratt, Kansas, from October 19, 1956, to July 31, 1972. Appellee, during this period, issued a group disability insurance plan to the bank. Appellant was enrolled in this plan on May 1, 1966.

Around February, 1969, appellant began feeling ill and made a number of visits to her doctor. During the latter months of 1971, and the spring and summer of 1972, appellant developed a mental illness subsequently diagnosed as Alzheimer's disease, which has been defined as follows:

"Alzheimer's disease (ahlts'hi-merz). [Alois Alzheimer, Ger. neurologist, 1864-1915.] Presenile dementia, which is similar to senile dementia but occurs in the 40-60 year age group. The disease has a relentless and irreversible course but may take from a few months to four or five years to go to the stage of complete helplessness." *Taber's Cyclopedia Medical Dictionary*, A-59 (12 ed. 1973).

One of the predominant symptoms of this disease is memory loss.

Appellant retired from her job at the bank on July 31, 1972. There is a dispute over the precise reason for appellant's retirement. Appellant claimed it was due to memory loss and mental malfunctioning resulting in her being unable to perform her employment responsibilities. Appellee claimed the disease was not contracted until after July 31, 1972, and therefore was not a consideration in appellant's decision to retire. Both parties presented evidence supporting their contentions. The disease was not diagnosed until May, 1973. Following her retirement, appellant's mental faculties progressively deteriorated until she became totally incapacitated and she remains so to this day. Homer Brown, appellant's husband, was appointed her conservator.

In January, 1973, an officer of the bank visited appellant's home and delivered a manila envelope to Mr. Brown, advising him it contained Mrs. Brown's insurance policies. It was not until January of 1976 that Mr. Brown examined the contents of the envelope and discovered a certificate of insurance under the policy issued by appellee. Mr. Brown contacted a bank officer who notified appellee of a potential claim for disability benefits by Mrs. Brown. This was approximately three years and six months after appellant retired. By the terms of the insurance policy, appellant's coverage terminated when she ceased to be employed at the bank and it also contained a proviso requiring written notice of a claim within ninety days of the date of loss. A grace clause made possible the waiving of the ninety day notice requirement in cases where it would not have been reasonably possible to furnish such notice providing notice was given as soon as possible.

Because of the late notice, appellee initially denied coverage but, upon being contacted by appellant's counsel, agreed to investigate the claim. Appellant contended that the grace clause was applicable thereby preserving her claim. After extended correspondence, appellant filed suit on July 14, 1976, which ultimately resulted in a jury verdict allowing recovery under the policy.

With the foregoing facts before us we will first address the appeal of the plaintiff.

K.S.A. 40-256 provides in pertinent part:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company . . . if it appear from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action . . . ."

The general rules applicable to the allowance of fees under K.S.A. 40-256 were enunciated by this court in *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 470 P.2d 756 (1970).

"Generally speaking, it is a question for the district court as the trier of the facts to determine whether an insurance company has refused to pay the full amount of an insured's loss 'without just cause or excuse' thereby subjecting itself to payment of an attorney's fee under K.S.A. 1968 Supp. 40-256. . . .

"It has been held that whether an attorney's fees are to be allowed depends upon the facts and circumstances of each particular case. (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P.2d 937; *Sturdy v. Allied Mutual Ins. Co.,* 203

Kan. 783, 457 P.2d 34.) Where the only issue between the parties is a factual dispute with respect to coverage under an insurance policy, and the insurer has refused to pay the full amount of the insured's loss for such reason, we are of the opinion the phrase 'without just cause or excuse' as used in K.S.A. 1968 Supp. 40-256, means a frivolous and unfounded denial of liability. However, if there is a bona fide and reasonable factual ground for contesting the insured's claim, there is no failure to pay 'without just cause or excuse.' And whether there was any reasonable ground for contesting the claim depends upon circumstances existing when payment is withheld or liability is declined. It is not necessarily determined by the outcome of the ensuing litigation. (*Wolf v. Mutual Benefit Health & Accident Association,* supra [188 Kan. 694].) The statutory penalty is not to be imposed merely for the reason that it turned out at the trial in the district court, there was, in reality, no reason for denial of liability. The question is, how did the matter appear before the trial as judged by a reasonable and prudent man seeking to determine the facts of the controversy which it was his duty in good faith to investigate." pp. 564-565.

See also *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403 (1973).

Before attorney fees can be awarded under K.S.A. 40-256, it must first appear that the insurance company "refused" to pay appellant's claim. *Sloan v. Employers Casualty Ins. Co.,* 214 Kan. 443, 521 P.2d 249 (1974); *Lord v. State Automobile & Casualty Underwriters,* 208 Kan. 227, 491 P.2d 917 (1971). Prior to such "refusal", the insurance company has a duty to make a good faith investigation of the facts. *Lord v. State Automobile and Casualty Underwriters,* 208 Kan. at 234; *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. at 565. The "refusal to pay" need not be an express one as "constructive" refusal will suffice. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 627, 567 P.2d 1359 (1977). Appellant argues that the appellee failed to make a good faith investigation of her claim. While it is true the defendant did not make an on-the-scene formal investigation, it sought through letters to appellant's counsel and the bank to verify the nature of appellant's illness, when it occurred, the reason for the termination of Mrs. Brown's employment and other information necessary to properly evaluate the claim. The learned trial court filed a memorandum decision stating:

"MEMORANDUM DECISION
"(Matter of Allowance of Attorney Fees)
"I have carefully reexamined the written evidence submitted at the time argument was heard in this matter, also the authorities cited, and, without the benefit of a transcript, I have also reviewed the evidence presented at the trial of this matter. I am simply unable to find in this case that the defendant insurance

company 'refused without just cause or excuse to pay the full amount of the loss'. The Supreme Court has construed the phrase 'without just cause or excuse' as used in K.S.A. 40-256 as meaning 'a frivolous and unfounded denial of liability'. I have concluded that the defendant had good cause and ample reason to submit the matter to a jury and should not be penalized for doing so.

"Here are my reasons:

"1. The long delay in submitting the claim. Some 42 months elapsed from the time Edith Brown became eligible to recover on this policy to the time the defendant was notified that she had a claim. It is quite true that the jury excused her for this long delay, but it cannot be denied that the defendant was at least to some extent prejudiced in making a proper investigation of the matter. Indeed it seems to me that the defendant was justified in requiring that the matter be submitted to a jury on the notice issue if for no other reason.

"2. I do not wish to decide this matter on a technicality, but I am not at all sure that the defendant had actually gotten to the point of finally refusing to pay the claim prior to the time suit was filed. The company's letter of June 4, 1976, indicates that investigation was continuing.

"3. Although the date and reason Edith Brown terminated employment with The Peoples Bank was of utmost importance to the defendant in evaluating this claim, much confusion is found in the correspondence to the defendant, both by counsel for plaintiff and the Bank, as to such date. As late as May 18, 1976, counsel was advising the defendant company that Edith Brown's employment continued until December 31, 1972.

"4. The evidence presented at the trial by this matter easily convinced the jury and this Judge that Edith Brown was 'wholly disabled' during the month of August, 1972, and became entitled to benefits under the terms of the policy, but the testimony of friends and fellow employees was the determining factor in the jury reaching its verdict. There was no evidence that the defendant company was ever advised prior to suit being filed as to what these persons would testify to. On the other hand, certain medical testimony was furnished to the defendant, but these evaluations were all made some months after she terminated her employment, and for this reason were not much help to the defendant in evaluating the claim.

"5. I have a strong feeling that had the Bank, when called upon to do so, frankly and without equivocation, notified the defendant that in their opinion Edith Brown became unable to perform her duties as teller during the early summer of 1972, and was terminated on August 1, 1972 for that reason, the defendant company would have taken a more positive attitude in handling this claim and perhaps this lawsuit could have been avoided. The Bank's attitude and failure to act in a positive way cannot, of course, be blamed on the plaintiff, but neither can it be blamed on the defendant.

"6. Along the same line, Dr. Black's statement of April 23, 1976, regarding the condition to Edith Brown's health during the critical period of 1972, was anything but convincing that she was entitled to recover under the terms of the policy.

"I realize that counsel for plaintiff relies heavily on the rule of 'good faith investigation' and cites *Lord vs. State Auto and Casualty Underwriters,* 208 Kan. 227; *Brown vs. Continental Casualty Company,* 209 Kan. 632, and *Matthew vs. Travelers Insurance Company,* 212 Kan. 292. I have read these cases and I agree with what is said in Syllabus 2 of the Matthews case. I quote:

'2. Insurance—Payment of Claim—Bona Fide Question of Liability—Good Faith Investigation. With respect to the application of the provisions of K.S.A. 1972 Supp. 40-256 an insurance company is not required to pay a claim without litigation where a bona fide question of liability exists, but the company is under an obligation to conduct a good faith investigation into the facts before it finally denies liability and refuses payment.'

"The trouble comes when we try to apply what is said above to the situation before the Court. I feel it is safe to say that the company was, at least to some degree, dragging its feet on its investigation, but considering the matter as a whole I am not ready to find that it had finally denied this claim without making a good faith investigation, in fact I am not at all sure it had finally denied the claim at all.

"The matter of assessment of attorney fees is to be determined on the facts and circumstances of each particular case. This case contains a rather odd set of circumstances and I must refuse to order the defendant to pay attorney fees.

DATED OCTOBER 21st, 1977."

The decision of the trial court was adequately supported by the evidence and we find no error in his holding that plaintiff was not entitled to recover attorney fees under K.S.A. 40-256.

We next turn to the cross-appeal of the defendant insurance company. Although the jury returned a general verdict to the effect that Mrs. Brown became totally disabled while employed at the bank and at a time when the group insurance policy was in effect, the determination of the actual date of total disability was left to the trial judge. The trial judge found such date to be July 31, 1972, the date of the termination of Mrs. Brown's employment. The dispute arising around the date of disability is important as it affects the amount of the disability payments to be received by Mrs. Brown. Under the original group policy the benefits for total disability consisted of 50% of the disabled employee's base pay for a period of five years and 25% for the second five years of disability. Effective May 1, 1972, the payments to be paid during the second five year period were increased by a "rider" issued by the company to 37-½% of the employee's base pay. There was no change in the amount to be paid during the initial five year period as it remained at 50%.

Before proceeding to the merits of the defendant's contentions we must first consider a procedural matter. Appellant has filed a motion with this court to dismiss the cross-appeal of the defendant on the grounds defendant has acquiesced in the judgment by paying into court, on December 16, 1977, the court costs and the sum of $10,738.75 in partial satisfaction of the judgment. This

amount evidently represents the amount due Mrs. Brown for the first five years of her disability under the 50% clause in the policy and, not being in dispute, will not be affected regardless of our decision on either the appeal or cross-appeal. It has long been the rule, with certain exceptions, that the payment of costs by an appellant or any other action that indicates an acquiescence in the lower court judgment bars an appeal. *Gordon v. Gordon,* 218 Kan. 686, 545 P.2d 328 (1976); *Howell v. Howell,* 142 Kan. 323, 46 P.2d 866 (1935); *Moffett v. Moffett,* 142 Kan. 9, 45 P.2d 579 (1935), and cases cited therein. See also West's Kansas Digest, Appeal & Error § 154(1), and 4 Am. Jur. 2d, Appeal and Error §§ 250-259. The basis for the general rule is that one who has acquiesced in or accepted the benefits of a judgment cannot thereafter take an inconsistent position and be heard to complain on appeal that the judgment is erroneous. However, numerous exceptions to the rule have developed and it is now generally held that in divorce cases the acceptance of periodic alimony payments does not preclude an appeal based upon the insufficiency of such payments. *Gordon v. Gordon,* 218 Kan. 686. In *Wollard v. Peterson,* 145 Kan. 631, 66 P.2d 375 (1937), this court in considering a motion to dismiss stated:

"A preliminary question arises on the suggestion of the plaintiff that the defendant surety company is estopped to assert error in the judgment a portion of which it has paid. The rule in Kansas is that acquiescence in a judgment, even to the extent of paying costs, is a bar to the right to take an appeal (*Paulsen v. McCormack,* 133 Kan. 523, 1 P.2d 259), and of course Kansas has uniformly held that the acceptance of proceeds of litigation or the benefits derived from the judgment amounts to a waiver of any error in the whole trial, but the acceptance of benefits and the acquiescence in a part of the burden of a judgment are two very different things, and no Kansas authority has been pointed out as to such a rule applying to acquiescence in some of the distinct and separate burdens of the judgment and appealing as to others. The question is whether one is estopped from showing errors in a proceeding where he submits to a burden imposed by the court as to one or more separate and distinct features of the judgment and appeals from others.

"It is said in 2 Am. Jur. 978:

'Another exception to the general rule has also been applied in the case of a decree consisting of two separate, distinct, and unrelated parts, the disposition of either of which can in no wise affect the decision as to the other.'
"It is also said in 4 C.J.S. 396:

'The right of appeal is favored by the law, and it will not be held to have been waived except upon clear and decisive grounds, and, where a judgment or decree involves distinct and severable matters or demands, a waiver or estop-

pel as to only one or a part thereof will not prevent an appeal as to the residue.' " pp. 632-633.

The rule set forth in *Wollard* was approved and followed in the recent case of *In re Estate of Moore,* 219 Kan. 719, 725, 549 P.2d 981 (1976). See also *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, 549 P.2d 927 (1976). In the instant case the insurance company in its cross-appeal is not attacking the general verdict of the jury and does not now contend that it is not liable under the policy. It also concedes that there is no argument about the amount of its payments to be made to Mrs. Brown during the first five years of her disability. The record shows that Mrs. Brown's unfortunate affliction has taken its toll and she now requires full time care and attention. Under such circumstances, the action of the insurance company in paying such sums as are not in contention on appeal is to be encouraged and it should not be penalized for having done so. Likewise, Mrs. Brown, if she has accepted such payment, should not be penalized. We hold that when a party to an appeal has paid any portion of a judgment rendered against such party, including the costs, such party will not be deemed to have acquiesced in the judgment so long as the issues on appeal cannot affect the payments made and the payment thereof is not involved in the issues on appeal. Likewise, any party to an appeal who accepts such payment shall not be deemed to have acquiesced in the judgment so long as the issues on appeal do not affect the obligation for the payment of or the right to receive such portion of the judgment. With the ever increasing costs of medical care and the high rate of inflation, the payment of sums acknowledged to be due from one party to another, and which are not involved in the appellate process, is to be encouraged rather than discouraged. We also hold that in such a case the payment of costs in the trial court by the appellant, when the assessment and amount of such costs cannot be affected by the decision on appeal, does not constitute such an acquiescence in the judgment that the appeal must be dismissed. Our prior cases to the contrary are overruled. The appellant's motion to dismiss the cross-appeal is denied.

We now turn to the merits of the cross-appeal. Defendant-appellee argues that the determination of July 31, 1972, as the date of total disability is contrary to the evidence and contrary to the arguments and position of the plaintiff. While it is true the

plaintiff took the position that she became totally disabled no later than April 1, 1972, there was also evidence to the contrary. The trial court took the logical position that considering the nature of Alzheimer's disease there was no specific date on which one could say Mrs. Brown suddenly became totally disabled. The nature of the disease precludes any distinct and specific instant or day when the disease renders one totally disabled.

In determining the definition of "disability" it is necessary to refer to the insurance contract. Initially, we recognize the general rule that a contract of insurance is to be strictly construed against the insurance company which prepared it and in favor of the insured. *St. Francis Hospital & School of Nursing, Inc. v. Eckman,* 212 Kan. 131, 510 P.2d 175 (1973).

Appellant's Certificate of Insurance provides the following with regard to monthly sickness indemnity:

"(1) If Sickness shall *continuously, necessarily* and *wholly disable* the Insured and *prevent him from performing each and every duty pertaining to his usual business or occupation,* and the Insured is under the regular care and attendance of a legally qualified physician or surgeon other than the Insured, the Company will pay periodically, *commencing with the first day of disability* following the applicable Elimination Period stated in the Schedule of Benefits, the applicable Monthly Indemnity stated in the Schedule of Benefits . . . ." (Emphasis supplied.)

This provision requires a continuous, wholly disabling sickness that prevents the insured "from performing each and every duty pertaining to his usual business." If allowed, benefit payments are to commence with the "first day of disability." While Alzheimer's disease is in its early stages an employee is still capable of performing his or her duties. At some point in time the illness inevitably renders the employee disabled to adequately carry out his duties.

Similarly, it appears appellant was not continuously and wholly disabled until her forced retirement on July 31, 1972. Appellant could not have made a claim prior to this time because the disease was only in the process of rendering her totally disabled. The record reveals that appellant worked until July 31, 1972, although her illness caused a high rate of absenteeism. Co-workers testified to specific instances where appellant couldn't get her window to balance or remember her customers. These occurred in the latter part of 1971 and early in 1972. However, the bank officers saw fit to keep appellant on the job

performing her duties. Not until July, 1972, did they seek to work out an arrangement with appellant so that she could retire. It was at this time the bank officers found it necessary to terminate appellant's employment because she could no longer perform her duties. Her employment was terminated July 31, 1972. It was not illogical for the trial judge to determine that date as the date of disability and his determination is supported by credible evidence.

The judgment is affirmed.