No. 45,304

Paul K. Libel, *Appellant,* v. Marie Corcoran, *Appellee,* (Ruth Moyer and Louise Burke, Defendants).

(452 P. 2d 832)

Opinion filed April 12, 1969.

John S. May, of Atchison, argued the cause, and George M. Osgood, of Prairie Village, and Cyrus Leland, of Washington, D. C., were with him on the brief for the appellant.

Maurice P. O'Keefe, Jr., of Atchison, argued the cause, and Jack R. Euler, of Troy, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is an action to set aside a deed to real estate and for relief auxiliary thereto.

The deed conveying more than four hundred acres of land near Severance, Doniphan county, Kansas, was executed by Grace Lyons in favor of her niece, Marie Corcoran. Plaintiff in the action to set it aside was Paul K. Libel, a nephew of Grace and a cousin to Marie. Also named as defendants in the action were Louise Burke and Ruth Moyer, sisters of Marie. The parties are Grace's sole heirs at law. Louise supports Marie's position in this lawsuit and Ruth is neutral.

Issues in the case as determined by the pleadings and pretrial conference order were Grace's competency to make a deed, undue influence, lack of independent advice, and delivery of the deed and of a small amount of personal property.

Trial to the court resulted in a judgment for the defendant Marie. Plaintiff has now appealed.

The trial court made the following findings of fact and entered judgment thereon:

"1. This is a suit to set aside a deed made by Grace Lyons to one of the defendants, Marie Corcoran.

"2. This deed was executed on July 2, 1962, and recorded on April 12, 1963 in the office of the Register of Deeds in Doniphan County, Kansas.

"3. This deed conveyed all the real estate owned by Grace Lyons, and the grantor, Grace Lyons reserved a life estate.

"4. Grace Lyons died intestate on April 1, 1963, leaving as heirs, Paul K. Libel, the plaintiff, a nephew, Marie Corcoran, a niece, Ruth Moyer, a niece, and Louise Burke, a niece, defendants.

"5. The deed was prepared by C. L. Burke, president of the Bank of Denton, Denton, Kansas at the request of Grace Lyons.

"6. Mr. Burke took the deed to the home of Marie Corcoran, where Grace Lyons was staying on July 2, 1962, at which time Grace Lyons signed the deed. Mr. Burke took the deed back to the Bank and a few days later Marie Corcoran came into the Bank and received the deed from Mr. Burke. Marie Corcoran had the deed in her possession at the time of the death of Grace Lyons.

"7. Grace Lyons had done her business at the Bank of Denton for many years and C. L. Burke, the President of the bank had acted as her financial advisor. Grace Lyons conducted her business up until the time of her death as shown by her borrowing money at the bank and signing her checks.

"8. Grace Lyons was indebted to the Bank of Denton at the time of her death and this indebtedness was paid by Marie Corcoran after the death of Grace Lyons.

"9. Grace Lyons stayed at the residence of Pearl Corcoran, mother of Marie Corcoran from December 1961, until February 16, 1963, the date of the death of Pearl Corcoran and continued to live at this residence with Marie Corcoran until her death on April 1, 1963.

"10. Grace Lyons was in poor health during this period of time and Marie Corcoran attended to her.

"11. Grace Lyons was a strong *will* person and was never influenced by C. L. Burke, Marie Corcoran or any other person.

"12. Grace Lyons was never at any time an incompetent person.

"13. Grace Lyons also gave the defendant, Marie Corcoran a small amount of personal property that she had; except the stock in The Federal Land Bank of Hiawatha, Kansas, and the dividends thereon.

"14. The deed was duly executed by Grace Lyons and was duly delivered to the defendant, Marie Corcoran."

This is essentially a fact case. Appellant's principal contentions upon appeal in effect ask us to reweigh those facts in the light of any conflict or inconsistency shown in the evidence. This, of course, is beyond the scope of our review, which is simply to ascertain whether the trial court's findings are supported by substantial competent evidence. In making this determination we are required to consider the evidence in its most favorable aspect to the party who prevailed in the court below (*Frame, Administrator v. Bauman*, 202 Kan. 461, 468, 449 P. 2d 525).

Although we are confronted with a voluminous record, there was actually little conflict in the evidence and we do not propose to detail it much beyond that set forth in the trial court's findings.

In December, 1961, Grace, who had been in poor health many years and was then seventy-three years of age, went to live with her sister Pearl Corcoran, mother of Marie, at Pearl's home in Severance. Marie made her home with her mother and also maintained an apartment in nearby St. Joseph, Missouri, where she was employed as a school teacher. Frequently throughout the years during the winter Grace would be hospitalized at St. Joseph and upon leaving would go to Marie's apartment to stay for several weeks before returning to her farm home. Many times she had discussed disposition of her property with her banker and business adviser at nearby Denton, Kansas, saying she wanted it to go to Marie. The banker told her if she was going to leave it all to one niece she could just as well do it by deed. She told the woman preparing her income tax return she was going to deed the farm to Marie, and at one time requested this woman to prepare the deed. At Grace's request the banker prepared the deed for her, conveying the property to Marie with reservation of a life estate. He was to come to the Corcoran home for her to sign it on June 30, 1962. On that date Ruth Moyer came to visit at the Corcoran home. As a

result Grace telephoned the banker not to come at that time. He was asked to come on July 2, 1963, and did so, at which time Grace signed the deed in the presence of Marie, the banker and also Grace's farm tenant who was called in to witness the transaction. A housekeeper and Marie's mother were also in the house but apparently did not witness the actual signing of the deed.

Touching the question of Grace's mental competence the record reveals appellant offered only the testimony of a nurse that it was her "vague opinion" there were times during one period of Grace's hospitalization when she was irrational in her conversation and difficult to understand. Arrayed against this was a mass of testimony, including that of the banker and Marie, two medical doctors, the housekeeper, two bank employees, her minister, and other disinterested relatives and friends, to the effect that during the period in question Grace was mentally competent and able to, and in fact did, transact her own business right up to the day of her death. She was variously described throughout as competent, intelligent, bright, alert, very determined, strong-willed, having decided opinions, not easily influenced, one who made her own decisions, having an independent mind, having a definite idea of what she was going to do, understanding her business affairs and as always knowing what she was doing.

It might also be said the evidence does not indicate Marie assumed any position of fiduciary relationship with Grace, that she brought any influence to bear on Grace, that she conducted any business for Grace except to assist upon Grace's request, or that she conspired in any way with the banker or anyone else toward having the deed executed. Moreover, although not essential here, Grace did have independent advice as to the disposition of her property.

Appellant's only contention having semblance of substance is that there was no evidence of delivery of the deed, rendering the instrument testamentary in character. The banker handling the deed (who had been in the banking business since 1912) testified at the trial. His memory was somewhat vague as to certain details of the transaction. However, he did testify that Grace signed the deed and returned it to him. In answer to a question as to whether Grace said anything about whom the deed was to be delivered to, the banker responded: "Oh, except she had me to make it out to

Marie and give it to me." Marie testified that Grace gave the deed to the banker and that he left with it. She also testified Grace said at the time of signing she "wanted me to see her sign it and the farm was mine and she wanted me to know it." The banker took the deed back to his bank where he notarized it and in a few days gave it to Marie. Marie kept the deed in her possession until after Grace's death. Marie testified: "She [Grace] knew when I brought it home and wanted to be sure that the descriptions were correct and all that, yes, and she knew I was to keep it in my possession and I did."

The tenant on Grace's farm upon his direct examination as a witness for appellant gave a different version of events after the signing of the deed. He testified the banker stated to Grace that now she couldn't borrow any more money on the farm as she had given it to Marie, whereupon Grace said she didn't want it that way and she put the deed in her dress and then put it in her "locker box" and kept it. Both Marie and the banker denied this occurred. Upon cross-examination the tenant gave contradictory answers in that he said the banker took the deed and went downstairs with Marie. The housekeeper at the Corcoran home testified that after the signing of the deed she had had long discussions with Grace alone in which Grace told her she had deeded the farm to Marie.

It is well established that in order for a deed to operate as a valid transfer of title it must be delivered. Delivery is largely a matter of the grantor's intention to divest himself of title, as shown by all the surrounding facts and circumstances (*In re Estate of Hulteen,* 170 Kan. 515, 227 P. 2d 112) and is ordinarily a question of fact (*Hoard v. Jones,* 119 Kan. 138, 158, 237 Pac. 888). In *Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490, it was said that the "usual test [of what constitutes sufficient delivery] is, Did the grantor by his acts or words, or both, manifest an intention to . . . divest himself of title?" (p. 337.) The same case held it is not necessary that a deed be delivered personally by the grantor to the grantee, and that an unconditional delivery to a third person for the use and benefit of the grantee, where the grantor intends to divest himself of the title and to part with control of the instrument, is ordinarily a sufficient delivery. And it has been stated that in a deed conveying gifts to children or relatives, the reservation by the

grantor of the property during his lifetime is evidence of an intention to deliver the instrument before his death, for there could be no purpose in placing such a reservation in the deed if it were not delivered in his lifetime. (*Hoard v. Jones,* supra, p. 156.) This principle was most recently stated approvingly in *Cole, Administrator v. Hoefflin,* 187 Kan. 66, 69, 354 P. 2d 362).

Had an astute legal technician engineered this transaction doubtless the trappings of delivery would have been more explicitly portrayed. However, delivery need not take any specific form and we think it clear from the evidence Grace knew what she wanted and what she was doing and that she sufficiently manifested that intention so as to effect a present transfer. We hold there was sufficient evidence, including the character of the instrument itself, to support the trial court's finding the deed was duly delivered to Marie.

Appellant complains the trial court improperly placed the burden of proof upon him as to nondelivery of the deed. In view of the trial court's finding the deed was duly delivered, this complaint is of no consequence. A party may not assign as reversible error that which is not prejudicial to him. Hence a litigant may not complain upon appellate review that the burden of proof was erroneously cast upon him where the trial court after full hearing made affirmative findings of fact contrary to his position (see *Stunkel v. Stahlhut,* 128 Kan. 383, 387-388, 277 Pac. 1023). The findings show the decision was made without regard to the state of evidence as to casting or shifting of burden of proof. Appellant did not lose because of any misconception by the court as to burden of proof but because the court affirmatively found from the evidence that Grace was an intelligent, strong-willed woman of sound mind who conducted her business without being influenced by anyone and who knew what she was doing in the disposition of her property and that she made delivery of the necessary instrument conveying title to her property in accord with her desire and intention. Moreover, in view of the fact the deed was in Marie's possession, appellant's position as to burden of proof could not in any event be sustained (see *Rohr v. Alexander,* 57 Kan. 381, 46 Pac. 699; *Hoard v. Jones,* supra; *Bowen, Administrator v. Hathaway,* 202 Kan. 107, Syl. ¶ 1, 446 P. 2d 723).

Although appellant says the amount is small he complains the trial court erroneously found that Grace gave Marie her personal property. The evidence is somewhat meager but we cannot say

as a matter of law it is insufficient to support the trial court's finding. The testimony was that Grace had her furniture and other personal property in her house on the farm. Grace had upon previous occasions told the banker she wanted to leave everything to Marie. At the time of signing the deed the banker told Grace that if she made a gift of everything in his presence that would be all that would be necessary. Grace orally gave her personal property to Marie, at the same time handing Marie the key to the house.

Manual delivery of personal property is not essential to the validity of a gift. Constructive or symbolic delivery may suffice where the property is not present or is incapable of manual delivery (38 C. J. S., Gifts, §§ 21-22). Under all the circumstances we think transfer of the key, coupled with words showing a donative intent, sufficient to constitute constructive or symbolic delivery.

Other matters urged in derogation of the judgment have been considered but do not warrant further discussion. No error being shown in the judgment, it is affirmed.

APPROVED BY THE COURT.