No. 46,802

RUPERT W. MATTHEWS, *Appellant,* v. THE TRAVELERS INSURANCE COMPANY, *Appellee.*

(510 P. 2d 1315)

Opinion filed June 9, 1973.

*M. John Carpenter,* of Great Bend, argued the cause and was on the brief for the appellant.

*Jerry M. Ward,* of Hampton & Ward, of Great Bend, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The issue in this appeal stems from an action brought by plaintiff-appellant upon a group health insurance policy issued by defendant-appellee to the Livingston Oil Company, insuring its

employees. The policy was described by a claim adjuster as a long-term disability income policy. For convenience the defendant-appellee will be referred to as Travelers or the insurer and appellant will be referred to as plaintiff or Matthews.

Plaintiff's claim for long-term benefits under the policy was settled in the sum of $9,000.00, two days before the case was set for trial. Thus, the sole issue adjudicated by the trial court was plaintiff's entitlement to attorney fees under K. S. A. 1972 Supp. 40-256. From an adverse ruling the plaintiff has perfected this appeal.

Plaintiff sustained a serious aggravation of a previous back injury on February 20, 1967. He was treated by Dr. Findley Law, of Ellinwood, and Dr. Reiff Brown, of Great Bend, through July of 1969. At the time of his injury plaintiff was fifty-five years of age. He had a sixth grade education and had spent his adult working life in the oil fields. He had been employed on pipeline construction crews; roustabout crews; as a production pumper; a subforeman pumper; and a foreman pumper. At the time of his injury he was performing the regular duties of pumper for Livingston Oil Company. There is no dispute about the duties of a pumper. In general, his responsibilities were to inspect and maintain the particular wells assigned to him—this involves driving a pickup truck; hauling supplies to the wells; making repairs when necessary; supplying the wells with chemicals and oil; and gauging tank batteries. A pumper carries five gallons of chemicals, normally weighing around sixty pounds. The chemicals are emptied into chemical feeder pumps that stand three and one-half to four feet high. The pumper also carries oil to the wellhead pumps in a five gallon can that weighs—when full—around forty-five pounds. Some wells require treatment every day. A pumper is also regularly required to make repairs to the pump engine which is considered to be heavy mechanical work. It is sometimes necessary to remove engine heads which vary in weight, depending upon the size of the engine, from twenty pounds to sixty or seventy pounds. A pumper is regularly required to repair lead lines or flow lines that have ruptured, this is accomplished by digging with a pick and shovel at the site of the leak. Usually, the pumper must dig a ditch from thirty to thirty-two inches deep in an area around and under the pipe where the leak is located. The pumper then repairs the leak by applying a clamp to the pipe if the leak is repairable, if not, a section of pipe is replaced. The evidence was that a pumper would normally be called upon to repair about one leak per week,

but sometimes there would be as many as one a day for several days at a time. The pumper is also required to climb the tank batteries, connected with the well, each day in order to gauge them. The tanks are ten feet high with a ladder attached. Some of the engines were equipped with electric starters, but others were not and these could be started only by kicking a large flywheel or cranking the engine.

Plaintiff was working as a pumper at the time of his injury in February of 1967. He has not been employed in any capacity since that date.

In brief, the policy required a qualifying disability period of ninety consecutive days of total disability; then provided for payment of weekly benefits for 104 weeks for total disability; and then if continuing total disability, as defined in the policy, was established the employee was entitled to weekly benefits until age sixty-five.

After the ninety day qualifying period provided for in the policy, Travelers commenced payments to plaintiff and continued them for a period of 104 weeks, at which time payments were terminated because Travelers decided plaintiff was not totally disabled within the meaning of the provision of the policy with respect thereto.

The last payment was made on May 26, 1969. Travelers had plaintiff examined by Dr. Brown on July 10, 1969. The report was received on July 15 and reviewed by Travelers. Based upon the report, Travelers decided that plaintiff was not entitled to further payments for disability. Plaintiff was advised of the decision and his file was closed. In December of 1969, upon contact by the plaintiff, Travelers reopened its file at which time plaintiff was advised that he must present proof that on May 26, 1967, he was totally disabled as defined by the policy. On April 23, 1970, plaintiff was again examined by Dr. Brown.

The provision of the policy with which we are concerned, is the definition of total disability, read:

"The term 'total disability' as used herein means the complete inability of an Employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education or experience, . . ."

The trial court found that the provisions of the policy are clear and must be given their ordinary meaning and interpretation. The court correctly stated that it must determine from the evidence

whether the termination of benefits was unreasonable so as to make the provisions of 40-256 applicable. In arriving at its decision that termination of benefits was not unreasonable the gist of the trial court's reasoning is set forth in two paragraphs of its memorandum decision, which we quote:

"If the defendant's termination of benefits to plaintiff is to be considered unreasonable it must be because of a failure to fully investigate their position at the time they received Dr. Brown's report of July 11, 1969. Since the court believes that there is no serious argument that plaintiff was not totally disabled within the meaning of this term as set forth in the case of Wolf v. Mutual Benefit Health and Accident Association, 188 Kansas 697, Syl 5, supra.

"This court does not believe that defendant was under a duty to further investigate. They had the medical report of Dr. Brown which gave plaintiff 15-20% impairment of function, which doctor had examined plaintiff before; defendant had the right to rely on this information; with the report of Dr. Brown and his findings, along with other information in their file they made a determination that plaintiff was not totally disabled as defined in the policy and as interpreted by our Supreme Court."

The trial court relied, primarily, on statements of this court appearing in *Gowing v. Great Plains Mutual Ins. Co.,* 207 Kan. 78, 483 P. 2d 1072; and *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P. 2d 219.

On appeal, plaintiff first contends that there was no substantial competent evidence to support the trial court's finding that plaintiff was not totally disabled at the time payments were suspended; and further that the failure to find total disability was inconsistent with the undisputed and uncontroverted evidence. Travelers responds by citing *McAdam v. Fireman's Fund Insurance Co.,* 203 Kan. 123, 452 P. 2d 851, and the well-recognized rule that where evidence is heard orally by the district court, its findings thereon have the force and effect of a jury's verdict and if supported by substantial evidence they will not be disturbed on appeal. Further, that on appeal this court is required to consider the evidence in its most favorable aspect to the party who prevailed in the court below ( citing *Libel v. Corcoran,* 203 Kan. 181, 452 P. 2d 832; *Riedel v. Gage Plumbing & Heating Co.,* 202 Kan. 538, 449 P. 2d 521; and *Frame, Administrator v. Bauman,* 202 Kan. 461, 449 P. 2d 525. )

Viewing the record before us in the light of the rules quoted and by which we are bound, the question posed on this point is a close one; however, in view of our disposition of the appeal, it is unnecessary to dwell at length upon it. It will suffice to say that it appears from an analysis of the record, the trial court based its

determination upon its interpretation of the insurance contract, particularly the definition of total disability, rather than solely on the evidence pertaining to plaintiff's degree of disability. We believe the trial court failed to apply the liberal construction to the policy definition of "total disability" dictated by several of our recent decisions. In this connection we note that at the time of the trial court's judgment on November 10, 1971, it did not have the benefit of our decision in *Brown v. Continental Casualty Co.*, 209 Kan. 632, 498 P. 2d 26, decided June 10, 1972.

In the *Brown* case, plaintiff, a finish carpenter, received injuries to his back in an automobile accident. Benefits for total disability were denied. An orthopedic surgeon testified that plaintiff might do supervisory work, but no heavy labor or carpenter's work. The Continental Casualty Company policy in *Brown* afforded benefits for "total disability" in terms essentially the same as the definition of "total disability" in the Travelers' policy in the instant case. The provision in the *Brown* policy appears as follows:

" 'When as the result of sickness . . . or as the result of injury . . . the Insured is totally disabled and continuously prevented from performing each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training or experience. . . .' " (pp. 633, 634.)

The *Brown* case was tried to a jury and resulted in a plaintiff's verdict. On appeal the insurer vigorously challenged the trial court's instruction on total disability, which is reproduced at page 634 of the opinion:

" 'You are instructed that it will be your duty to determine from the evidence and the law as given you in these instructions whether or not the plaintiff has been so totally disabled as to be unable to perform his duties as a finish carpenter, and if he has been so totally disabled, the period or periods for which he is or has been so totally disabled. Your criterion for determining whether he is or was totally disabled to perform his duties as a finish carpenter is whether or not his disability was such as to render him substantially unable to perform in the usual and customary way a substantial and material portion of the duties of a finish carpenter.' "

This court, in unanimous decision, approved the instruction, holding:

"A health and accident policy which relates total disability to the inability of the insured to perform the duties pertaining to his occupation does not require total helplessness on the part of the insured; it is sufficient that the insured is unable to perform the material and substantial duties of his business or occupation in the customary and usual manner." (Syl. ¶ 1.)

In the opinion numerous precedents were cited, including our decision in *Wolf v. Mutual Benefit Health & Accident Association*, supra; *Scharbach v. Continental Casualty Company*, 83 Idaho 589, 366 P. 2d 826; *Lorber v. Aetna Life Insurance Company*, 207 So. 2d 305 (Fla. App.); and 15 Couch on Insurance, 2d, § 53:67, p. 74. Mr. Justice Fontron, the author of the opinion, observed:

"The woods of legal precedent are full of like pronouncements, but the foregoing citations will suffice to make the point." (p. 636.)

In the *Brown* opinion it was noted that the *Lorber* case was frequently cited as an affirmation of the rule. *Lorber* dealt with a policy which provided for disability payments where the insured was "unable to perform *every* duty pertaining to his occupation." We quoted with approval this statement of the Florida court:

" ' . . . In accordance with the usual rule, a liberal construction is given to such provisions in order to protect the policyholder. There is almost unanimous authority for the interpretation of the provision quoted to provide that:

" ' "If the insured is unable to perform his material duties pertaining to his usual and customary occupation in substantially the same manner as before, he may recover. If he is able to do substantially all the acts material to his business and there are only a few immaterial things which he cannot do, the rule is otherwise, but if there is any material, important, or substantial act which he cannot fulfill, recovery must be allowed." See Dennis v. Business Men's Assurance Company of America, La. 1965, 175 So. 2d 431; Struble v. Occidental Life Insurance Co. of California, 1963, 265 Minn. 26, 120 N. W. 2d 609; cases cited in 1A, Appleman, Insurance Law and Practice, § 671, p. 601 note 5.' (pp. 308, 309.)" (pp. 635, 636.)

Applying what was held and said in the *Brown* case to the policy and facts in the case at bar it is evident the trial court was too restrictive in its interpretation of the total disability definition.

When payments were initially withheld in the instant case in May of 1969, Travelers had not had the plaintiff examined by a physician. When Dr. Brown subsequently examined plaintiff on July 10 his report set out specific limitations on plaintiff's ability to perform duties of employment. In his report Dr. Brown reviewed the plaintiff's specific problems with respect to his back and shoulders and concluded:

". . . In my opinion he has fifteen to twenty percent permanent partial impairment of function of the body as a whole on the basis of these difficulties and *I would not expect him to be able to perform heavy manual labor*. I would, however, expect him to do some type of work especially if he were suitably trained. Ideally a position in which he could be on his feet for short periods of time and then spend a relatively short period of time in the sitting position. . . ." (Emphasis supplied.)

At the trial, Dr. Brown testified further concerning his examination of plaintiff on July 10, 1969. He said that it was his opinion that plaintiff could engage in occupations or employment for wages or profit for which he was educated or could be trained. However, Dr. Brown admitted that he had no information on plaintiff's background or training other than that he had done oil field work. When questioned concerning the jobs plaintiff would be required to do either as a pumper or a foreman, Dr. Brown admitted there were a number of jobs that plaintiff could perform only with considerable difficulty, if at all. Dr. Brown admitted that on July 10 he would not have passed plaintiff for a preemployment physical for the position of pumper. Considering Dr. Brown's reports and testimony as a whole it cannot be said that they establish a basis for reliance by Travelers on the rule that where an insurer's refusal to pay is based on a reputable physician's certificate and advice, its action in withholding payment is not unreasonable.

The evidence of plaintiff's education and training was undisputed as was the evidence pertaining to the duties of a roustabout, pumper or foreman. In *Brown* we reiterated what was held in *Wolf v. Mutual Benefit Health & Accident Association*, supra.

"Total disability, within the meaning of insurance policies, does not necessarily mean utter helplessness, or inability to perform any task, or even in some cases, usual tasks for a limited period. It is only necessary that the disability render him unable to perform the substantial and material acts of a business or occupation in the usual and customary way." (Syl. ¶ 5.)

We believe the undisputed evidence classifies plaintiff on July 10, 1969, as totally disabled under the applicable legal definitions thereof set out in *Brown* and *Wolf*. However, we do not base our decision on this ground alone. We believe, that under the facts here, as was the situation in *Brown*, plaintiff's claim was too hastily and peremptorily denied.

In this connection, plaintiff for his second point contends the trial court erred in its conclusion that Travelers was under no affirmative duty to further investigate plaintiff's claim after receiving a single medical report. On this point the trial court stated that it did not believe Travelers was under a duty to further investigate since it had the medical report of Dr. Brown which gave plaintiff a 15-20% impairment of functions.

Travelers had in its file information that plaintiff only had a sixth grade education and had never done any work other than heavy, physical oil field labor.

The testimony of Richard L. Gallion, assistant manager of Traveler's claim department, is narrated in part as follows:

"They knew from their previous investigation that he was not a high school graduate, and that he had worked in the oil fields practically all of his adult life in various capacities for various companies. Specifically that he had worked as a roustabout and pumper in the oil field since 1946.

". . . He had had occasion to be in contact with oil field workers of various types, and he had some idea of the work involved for a roustabout or pumper. However, he would be unable to describe in detail the job qualifications or classifications although he felt a roustabout would be known as general labor, and a pumper is more of a general maintenance type of thing. Their claims investigator determined in a general nature what Mr. Matthews' duties were, but at no time did they make an investigation to determine exactly what physical duties were involved on the jobs for which Mr. Matthews was qualified."

Gallion further testified that at the time of termination the company never contacted Dr. Brown for his judgment and interpretation of the medical report. If Travelers had made further inquiry they would have learned from Dr. Brown that plaintiff could actually perform none of the duties of a pumper on a sustained basis and some duties he could not perform at all.

The duty to investigate with respect to the issue whether an insurer's refusal to pay a claim or loss without just cause has been considered by this court in several recent cases.

In *Brown v. Continental Casualty Co.*, supra, a situation closely analogous to that presented here was before the court. In the *Brown* case Dr. Kaufman, an orthopedic surgeon, submitted a medical report concerning Brown's ability to perform the functions of a carpenter, which was in many ways similar to the report made by Dr. Brown in the instant case with respect to plaintiff's capacity as a pumper. With respect to Dr. Kaufman's report we said in the *Brown* opinion:

"The circumstances made known to Continental by Dr. Kaufman's report were of themselves such as to require more than a simple armchair perusal of the report; we believe they require a goodfaith effort to secure additional medical information. Surely, in the eyes of the law, 'just cause or excuse' signifies more than passive inaction in the face of a medical report which, though it might be ambiguous, strongly suggests that an insured under an occupational disability policy, is wholly disabled from performing the functions of his occupation. . . ." (pp. 640-641.)

The duty of an insurer, under such circumstances, to make a good faith investigation of the facts before finally refusing to pay a claim was also commented upon in *Lord v. State Automobile &*

*Casualty Underwriters*, 208 Kan. 227, 491 P. 2d 917; and *Koch, Administratix v. Prudential Ins. Co.*, 205 Kan. 561, 470 P. 2d 756.

In the case at bar, Travelers abruptly terminated payments upon the termination of the 104 weeks preliminary period. Several weeks later it had plaintiff examined and received Dr. Brown's report which, even in view of the scanty knowledge pertaining to plaintiff's education and employment potential that Travelers had at hand, should have put it on notice. We believe that under the circumstances confronting it, Travelers failed in its duty to conduct a good faith investigation of plaintiff's claim of disability. It follows that Travelers's refusal to pay plaintiff's claim was without just cause within the meaning of K. S. A. 1972 Supp. 40-256.

The trial court heard evidence on plaintiff's claim for attorney fees in the trial below, but, of course, a fee was not fixed. The case must be remanded with directions to determine and allow plaintiff reasonable attorney fees.

Application has been made for counsel fees for legal services rendered in this appeal. After due consideration the application is granted and a fee of $1000.00 will be allowed.

The judgment is reversed and the case remanded for further proceedings.

FROMME, J., dissenting. The opinion of the court acknowledges but ignores the well recognized rule that an appellate court should not substitute its judgment on questions of fact for that of a trial court when there is substantial evidence. The appellate court in making a determination that there is no substantial competent evidence to support the judgment of a trial court is required to consider the evidence in its most favorable light in relation to the party who prevailed in the trial court.

The central fact question decided by the trial court was whether the defendant insurance company was under a duty to further investigate the claim of total disability after receiving the second medical report of Dr. Brown who gave plaintiff a 15-20% impairment of function rating. The trial court found the defendant had a right to rely on this report and other information. This court finds the second report of Dr. Brown was not sufficient to merit reliance and that a good faith investigation of the facts should have thereafter been made independently of the report. I cannot say there was no substantial evidence to support the trial court and I respectfully dissent.