(130 P.3d 117)
No. 94,800

WILLIAM F. MUNCK, *Appellant*, v. KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Appellee.*

Opinion filed March 10, 2006.

*Frank D. Taff*, of Topeka, for appellant.

*J. Phillip Gragson*, of Wright, Henson, Clark, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellee.

Before RULON, C.J., JOHNSON and HILL, JJ.

RULON, C.J.: Claimant William F. Munck appeals the termination of his Kansas Public Employees Retirement System (KPERS) disability benefits, contending the administrative hearing officer and the district court misconstrued applicable statutory provisions and erroneously applied workers compensation case law to resolve

his disability claim. The claimant further alleges respondent KPERS unconstitutionally suspended the claimant's disability benefits without a timely hearing and illegally contracted for a provision to deprive benefit recipients of due process.

As this is the second time this case has been presented to this court, a detailed recitation of the underlying facts is unnecessary. The claimant is legally blind and can read only written objects within a very close proximity of his eyes. Until 1998, claimant worked as a field supervisor in the Business Enterprise program of the Kansas Department of Social and Rehabilitation Services (SRS). However, in 1997, the claimant suffered a work-related injury to his neck, which required surgery involving a spinal fusion and installation of a cervical vertebrae plate. See *Munck v. Kansas Public Employees Retirement System*, No. 89, 428, unpublished opinion filed March 5, 2004 (slip op. at 2-3).

The claimant formally requested disability benefits, which he originally received. Due to information the claimant had been working at the Arcadia Antique Mall, however, Security Benefit Life Insurance Company (Security Benefit), the contractual administrator of KPERS disability benefits, notified the claimant that his benefits were suspended.

The claimant challenged the administrative termination of his disability benefits and, ultimately, appealed the benefit determination to this court. Although this court determined the record contained sufficient evidence to support the termination of the claimant's benefits, this court held that such a determination was not appropriate for summary judgment. This court remanded the case to the administrative hearing officer for a full hearing on the issue of whether the claimant refused accommodated work without good cause. *Munck*, slip op. at 2-3.

On remand, the administrative hearing officer held a full evidentiary hearing, after which the hearing officer found that SRS offered the claimant a head set telephone attachment, a reading stand, a "clothesline" reader, as well as the assistance of other employees for nonessential job tasks. Rather than attempting continued employment with the accommodation offered by SRS, the claimant refused to return to work until he was authorized to do

so by his personal physician. The claimant did not consult his physician about the offered accommodations. Consequently, the administrative hearing officer found the claimant had refused accommodated employment for which claimant was qualified without good cause. The hearing officer found the claimant was not totally disabled within the meaning of K.S.A. 74-4902(32).

The Board of Trustees of KPERS upheld the administrative hearing officer's determination. On appeal, the district court adopted, in full, the administrative hearing officer's findings of fact. The district court found the administrative decision was supported by substantial competent evidence and was not demonstrably unreasonable, arbitrary, or capricious. The district court affirmed the disability benefit determination.

## The Denial of Benefits

The claimant argues the district court and the administrative hearing officer applied a narrow interpretation of "total disability" when considering his claim for disability benefits. The claimant contends that, by law, a disability claim is to be liberally construed and suggests that employment accomplished only through accommodation is not equivalent to "any occupation for which the member is reasonably suited by education, training, or experience," as provided by K.S.A. 74-4902(32).

At the outset, however, this court must clarify the scope of our review. The claimant contends that KPERS bears the burden of proving KPERS's action in terminating the claimant's benefits was justified. Consequently, the claimant expects this court to ascertain whether Security Benefit, as the administrator of KPERS disability benefits, based its decision to terminate the claimant's benefits on substantial competent evidence. The claimant misunderstands the scope of our review. Irrespective of the burden of proof within the administrative process, the party complaining of an agency action, *i.e.*, the final administrative decision, bears the burden of establishing error on judicial review. See K.S.A. 77-621(a)(1).

Under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), a reviewing court may reverse a decision of the administrative agency which is based upon a determination

of fact only when that determination is not supported by substantial competent evidence when the record is viewed in its entirety. K.S.A. 77-621(c)(7). Substantial competent evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. The evidence must be viewed in a light most favorable to the prevailing party; it is not for an appellate court to reweigh the evidence. See *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

. Rather than challenging the evidence supporting the agency determination, however, the claimant challenges the legal standard by which his disability claim was measured. The claimant contends the hearing officer and the district court properly referred to the statutory definition of "total disability" but failed to properly apply the definition to the facts of his claim. The proper application of a statutory provision is a question of law, over which this court may exercise unlimited review. Although an appellate court should grant due deference to an administrative agency's interpretation of the law in its field of expertise, the KJRA permits this court to correct an erroneous application of the law by an agency. See *Neal*, 277 Kan. at 11.

K.S.A. 74-4902(32) defines "total disability" as "a physical or mental disability which prevents the member from engaging, for remuneration or profit, in any occupation for which the member is reasonably suited by education, training or experience." The administrative hearing officer interpreted the meaning of "any occupation for which the member is reasonably suited by education, training or experience" to include employment for which a member is suited through reasonable accommodations. The claimant disagrees and, in a convoluted argument, argues that the statutory definition of "total disability" was incorporated into a contract between the claimant and KPERS and that because insurance benefits are at stake, this court must interpret the provisions in a manner most beneficial to the claimant. We disagree.

Ordinarily, this court construes ambiguous language in an insurance contract in a manner consistent with the meaning a reasonable person in the position of the insured would understand.

See *Hodgson v. Bremen Farmers' Mut. Ins. Co.*, 27 Kan. App. 2d 231, 233, 3 P.3d 1281, *rev. denied* 268 Kan. 886 (1999) (citing *Brumley v. Lee*, 265 Kan. 810, 812, 963 P.2d 1224 [1998]). But, such rule is premised upon the insurer writing the contract, thus controlling the ability to make the language of the coverage and limitation provisions clear. See *Union State Bank v. St. Paul Fire & Marine Ins. Co.*, 18 Kan. App. 2d 466, 471, 856 P.2d 174, *rev. denied* 253 Kan. 864 (1993).

Where the terms of the contract are governed not by the insurer but by statute, this court applies a different rule of interpretation, which is to effectuate the intent of the legislature. See *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005). Citing K.S.A. 74-4927(3)(A), the claimant argues that the intent of the legislature in enacting laws governing employee disability benefits was to provide "the broadest possible coverage for members." However, the claimant takes this statement out of context. The provision, in context, reads:

"To carry out the legislative intent to provide, within the funds made available therefor, the broadest possible coverage for *members who are in active employment or involuntarily absent from such active employment,* the plan of death and long-term disability benefits shall be subject to adjustment from time to time by the board within the limitations of this section. The plan may include terms and provisions which are consistent with the terms and provisions of group life and long-term disability policies usually issued to those employers who employ a large number of employees. The board shall have the authority to establish and adjust from time to time the procedures for financing and administering the plan of death and long-term disability benefits authorized by this section. Either the insured death benefit or the insured disability benefit or both such benefits may be financed directly by the system or by one or more insurance companies authorized and licensed to transact group life and group accident and health insurance in this state." (Emphasis added.)

Nothing within this provision excludes accommodated employment as an "occupation for which the member is reasonably suited by education, training or experience." Nevertheless, the claimant contends that a liberal interpretation of the disability statute, as required by Kansas law, precludes KPERS from presenting a member with the choice of accepting accommodated employment or foregoing disability benefits.

In *Matthews v. Travelers Insurance Co.*, 212 Kan. 292, 510 P.2d 1315 (1973), our Supreme Court considered the effect of a private disability insurance provision which defined "total disability" as "the complete inability of an Employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education or experience." 212 Kan. at 294. The district court upheld the suspension of disability benefits, but our Supreme Court concluded the district court had erroneously construed the contract provision narrowly. 212 Kan. at 296. The *Matthews* court then applied the standard approved in *Brown v. Continental Casualty Co.*, 209 Kan. 632, 498 P.2d 26 (1972).

" 'A health and accident policy which relates total disability to the inability of the insured to perform the duties pertaining to his occupation does not require total helplessness on the part of the insured; it is sufficient that the insured is unable to perform the material and substantial duties of his business or occupation in the customary and usual manner.' " *Matthews*, 212 Kan. at 296 (quoting *Brown*, 209 Kan. 632, Syl. ¶ 1.).

Here, the primary obstacle to the claimant's ability to perform the material and substantial duties of his employment with SRS is his poor vision, which requires him to bring documents close to his eyes in order to read them. This difficulty was exacerbated by the injury to the claimant's back and the subsequent surgery which limited his mobility. In conjunction, these disabilities prevented the claimant from conducting his duties as he had before his injury.

However, SRS offered the claimant several accommodations which, purportedly, would allow the claimant to accomplish the material and substantial duties of his employment in much the same manner as the claimant performed his tasks prior to his back injury, except the accommodations accounted for the claimant's decreased flexibility. The administrative hearing officer found the claimant's refusal to attempt his duties with the proffered accommodations was equivalent to refusing employment for which he was suitably educated and trained.

Under the facts of this case, where an employer has offered accommodations which would enable a disabled KPERS member to resume the material and substantial duties of his or her em-

ployment—a position for which he or she was suitably qualified prior to the disabling injury, the position becomes an "occupation for which the member is reasonably suited by education, training or experience." Thus, the disability cannot be deemed a "total disability," within the meaning of K.S.A. 74-4902(32). The administrative hearing officer and the district court did not erroneously interpret or apply the statutory definition of "total disability" under the facts of this case.

## Application of Workers Compensation Law

In a related issue, the claimant contends the district court erred in applying *Swickard v. Meadowbrook Manor*, 26 Kan. App. 2d 144, 979 P.2d 1256 (1999), a workers compensation case, to support the court's finding the claimant must attempt reasonably accommodated employment in order to qualify for disability benefits under KPERS.

The material issue in *Swickard* was whether an injured employee could receive permanent partial disability benefits under the Kansas workers compensation statutes when an accommodated position had been offered and refused.

The pertinent statutory provision provided, in part:

"An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." K.S.A. 44-510e(a) (Furse 1993).

Although this provision constituted a departure from the former statutory provision, which imposed a presumption against permanent partial general disability compensation when the injured employee was engaged in employment for wages comparable to those earned by the employee prior to the injury, this court concluded the presumption remained valid. *Swickard*, 26 Kan. App. 2d at 148. From this presumption, the *Swickard* court reasoned that workers compensation law would not allow an employee who was capable of earning a comparable wage to collect permanent partial general disability simply because that employee refused such employment without sufficient cause. Quoting from *Foulk v. Colonial Terrace*,

20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), the *Swickard* court emphasized " 'it would be unreasonable . . . to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system.' " *Swickard,* 26 Kan. App. 2d at 149.

The definition of "total disability" under the KPERS statutes requires a determination that an employee is incapable of performing an occupation for which the state employee is reasonably suited by education, training, or experience. In other words, an employee is not totally disabled within the meaning of the statute if he or she is capable of performing duties comparable to those performed prior to the disability. Implicitly, comparable employment would encompass a position held prior to the disability which is made suitable by reasonable accommodation.

In devising a plan for providing disability benefits for state employees, as in planning for a comprehensive insurance program for work-related injuries, it is quite probable that the legislature would not intend employees capable of continued employment to capitalize from the system by refusing offered employment for which they were qualified and capable. Although KPERS disability and workers compensation disability benefits are governed by completely separate statutes, the presumption against refusing a reasonable accommodation for employment without good reason appears equally valid. The district court did not err by relying upon persuasive authority pertaining to workers compensation disability cases.

The claimant correctly notes that a refusal of an accommodated position, in itself, may not be sufficient to deny disability benefits. An administrative hearing officer may properly consider the basis for an injured employee's refusal to accept an offered accommodation, when determining whether to apply the presumption. See *Parsons v. Seaboard Farms, Inc.,* 27 Kan. App. 2d 843, 847-48, 9 P.3d 591 (2000) (consideration of distance to travel and time of day for accommodated position); *Tharp v. Eaton Corp.,* 23 Kan. App. 2d 895, 896, 940 P.2d 66 (1997) (consideration of quality of offered accommodation).

Nevertheless, the claimant failed to demonstrate a legitimate basis for refusing the accommodations offered by KPERS. The claimant has not provided any credible evidence which demonstrates that the offered accommodations would be ineffective, humiliating, or uncomfortable. Because the claimant bears the burden of establishing error, the absence of such evidence is fatal to this issue on appeal.

### Denial of Timely Hearing

Next, claimant challenges KPERS's termination of his benefits without due process. Although the claimant separates his arguments concerning the inadequacy of the procedure used to suspend his disability benefits and the timeliness of the administrative hearing following his written request, the arguments may be consolidated into a single issue.

As the claimant notes, this issue was addressed by the district court in his first appeal. The district court found that, to the extent that KPERS did not hold a hearing within 60 days of the claimant's first written request on February 17, 1999, KPERS violated the claimant's constitutional right to due process. The district court held the claimant was entitled to retroactive disability payments from February 5, 1999, through July 22, 1999. However, because the claimant eventually received an administrative hearing concerning KPERS's termination of the claimant's disability benefits, the district court reasoned the initial due process violation did not taint the subsequent proceedings or the ultimate disability determination.

Although, in the first appeal, KPERS challenged the district court's award of retroactive disability payments and the claimant challenged the constitutionality of the procedure outlined in K.S.A. 74-4904(2) for the commencement of an administrative hearing, this court did not consider either issue, commenting only on KPERS's cross-appeal. "[T]he retroactive issue raised by the cross-appeal may or may not become justiciable on remand and we thus decline to issue what may become an advisory opinion." *Munck,* slip op. at 1.

On remand, the administrative hearing officer refused to address the constitutional question, opining there was no authority to determine the constitutionality of the notification and hearing procedures of KPERS. The claimant again raised the due process concern in his appeal to the district court. However, the district court summarily denied the claim, stating: "Ultimately, [claimant] advances many arguments in his brief that question the decision reached by the Review Board. The Court has considered all arguments and finds that the [claimant] has failed to meet his burden of showing any factors for granting review under K.S.A. 77-621(c)."

At the administrative hearing, KPERS offered the testimony of Laurie McKinnon, who stated that KPERS's previous legal counsel, Ron Fairchild, had told McKinnon the claimant waived the statutory right to an immediate hearing because he wished to resolve the workers compensation case first. Frank Taff, the claimant's counsel, was given an opportunity to testify to refute this information, but refused. Consequently, on appeal, KPERS contends this court must adopt the unrefuted testimony of McKinnon and hold that the constitutional right to due process was waived by the claimant.

KPERS's waiver argument is untenable. The administrative hearing officer made no finding concerning the claimant's waiver of a timely hearing, and the district court failed to address the matter. Therefore, this court has no factual findings to review.

Moreover, even though the Administrative Procedure Act allows an administrative hearing officer, not being bound by rules of evidence, to consider hearsay information, the standard of judicial review of factual determinations is whether the agency action is supported by "evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(7). A self-serving, double-hearsay statement of a witness that a now-deceased attorney had told her that an opposing attorney had offered to waive his client's statutory right to a hearing within 60 days cannot be construed as substantial evidence.

Once the claimant has established a due process violation from KPERS's failure to provide a timely post-termination hearing, KPERS's argument that the claimant waived a timely hearing is in

the nature of an affirmative defense. The party raising an affirmative defense also bears the burden of proving the defense. See *Tabor v. Lederer*, 205 Kan. 746, 748, 472 P.2d 209 (1970). The offered statement is insufficiently reliable to establish the existence of waiver to a preponderance of the evidence, even if such statement is unchallenged with competing evidence. KPERS's waiver argument fails.

"To prevail on [a] due process claim, appellants must show that they possess a definite liberty or property interest and that this interest was abridged, under color of state law, without appropriate process. See *Board of Regents v. Roth*, 408 U.S. 564, 569-79, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).

"To establish a property interest in a particular benefit, appellant must have a 'legitimate claim of entitlement to it.' *Board of Regents v. Roth*, 408 U.S. at 577. A person's interest in a benefit becomes a property interest for due process purposes if there are 'rules or mutually explicit understandings' that support the claim of entitlement to the benefit and that the person may invoke at a hearing. *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). Without the existence of such rules or understandings, the person has only an abstract desire for or a unilateral expectation of the benefit. *Board of Regents v. Roth*, 408 U.S. at 577." *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 354, 770 P.2d 423 (1989).

While the legislature clearly has established rules supporting a KPERS claimant's entitlement to disability benefits, the issue in this case is not whether the claimant has received due process, as he clearly has received the full panoply of procedural rights within the administrative context and upon judicial review. Rather, the question is what effect, if any, KPERS's delay in providing a post-termination hearing had upon the claimant's request for disability benefits.

As indicated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), whether a pretermination hearing is required to protect an individual's property interest depends upon three factors: (1) the private interest at stake; (2) the risk of an erroneous deprivation through the procedures applied; and (3) the government's interest in prompt termination. See *Baughman v. U.S.D. No. 500*, 27 Kan. App. 2d 888, 894, 10 P.3d 21 (2000). The *Mathews* Court weighed a disabled person's need for continued income against the government's interest in conserving fiscal

and administrative resources and concluded that the post-termination administrative process adequately protected a disabled person's property rights. The administrative procedure established for addressing KPERS disability claims is not far removed from the procedure discussed in *Mathews*. Therefore, the administrative procedures employed in this case seemingly comport with due process.

Of greater importance to this appeal, the United States Supreme Court has held that a post-termination proceeding must be sufficiently prompt in order to comport with due process. See *Gilbert v. Homar*, 520 U.S. 924, 138 L. Ed. 2d 120, 117 S. Ct. 1807 (1997); *FDIC v. Mallen*, 486 U.S. 230, 100 L. Ed. 2d 265, 108 S. Ct. 1780 (1988). In *Mallen*, the United States Supreme Court considered the administrative procedures used in the suspension of a Federal Deposit Insurance Corporation officer. The *Mallen* Court specifically approved a procedure which provided for a hearing within 30 days of the officer's request and a decision 60 days from the date of the hearing. 486 U.S. at 242-43.

K.S.A. 74-4904(2) provides that KPERS must provide a hearing upon receipt of a written request from any person aggrieved by an order or decision of the board at the next scheduled meeting or at a special meeting within 60 days. The parties apparently do not dispute that the claimant requested a hearing in writing on February 17, 1999. Thereafter, on July 22, 1999, the claimant received a letter from KPERS's counsel, reiterating KPERS's denial of the claimant's disability benefits and notifying the claimant that the letter represented written notice pursuant to K.S.A. 74-4904. The claimant again notified KPERS of his interest in a hearing in a letter written on August 3, 1999. KPERS's counsel notified the claimant that claimant's request was being forwarded for a hearing to KPERS on August 17, 1999. KPERS notified the claimant that a hearing officer would be appointed at the next meeting of the Board on September 17, 1999.

Initially, it should be noted that the claimant's initial request for a hearing was directed to Security Benefit, not to KPERS. Nevertheless, the letter notifying the claimant of the suspension of his disability benefits was written by Security Benefit, as administrator

of KPERS disability benefits, and the letter contained nothing to indicate that a request for a hearing should be directed to KPERS. Furthermore, as the agent administering the disability benefits, Security Benefit ought to be treated as KPERS when a disability recipient wishes to challenge a benefit decision made by Security Benefit on behalf of KPERS.

While the statutory procedure established for challenging KPERS disability determinations comports with due process, arguably, the statutory procedures were not efficiently implemented in this case. Therefore, the claimant validly complains of KPERS's conduct in terminating his benefits without a timely post-termination hearing.

Although resolving a materially different property interest, our Supreme Court has noted that an ultimate conclusion that a claimant possesses no valid property interest is not a defense to a violation of due process.

" 'The school board has argued that the trial in the district court amounted to a due process hearing in which the court found justifiable cause for termination. The thrust of the argument being that such a determination removes any liability of the board for wages after the wrongful termination of the contract. We cannot agree. Constitutional due process in this case required a hearing by the school board before the discharge. The trial in district court was brought by the teacher to enforce his property right which we have determined was violated and which gave rise to the action in the district court. The district court's decision denying relief was based upon the faulty premise that the issue presented was limited to whether the discharge was justifiable. Instead, the issue presented to the court was whether the board had violated a protected right to constitutional due process.' " *Kansas Dept. of SRS v. Goertzen*, 245 Kan. 767, 776, 783 P.2d 1300 (1989) (quoting *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 32-33, 542 P.2d 339 [1975]).

In the present case, this court is presented with an untimely post-termination hearing rather than a failure to provide a pre-termination hearing, but the result is essentially the same. According to *Goertzen* and *Wertz*, the remedy is retroactive payments for the period between the date the hearing should have been commenced, *i.e.*, 60 days from the written request, or April 19, 1999, and the date the initial administrative hearing procedures actually commenced.

We remand the case to the hearing officer for an evidentiary hearing to determine: (1) whether the claimant's due process right to a timely post-termination hearing was violated or whether the claimant validly waived his right to have the administrative hearing process initiated within 60 days of his written request; and (2) if a due process violation occurred, the length of the delay in the administrative hearing procedure and the appropriate amount of retroactive disability benefits to be awarded.

## Illegal Delegation

As a final issue, the claimant again challenges a provision within KPERS's Administrative Services Agreement with Security Benefit denying an administrative hearing to disability claimants. This issue was raised in the prior appeal to this court. This court determined this claimant lacked standing to challenge the administrative service agreement provision because the provision was not enforced against him. *Munck,* slip op. at 3.

The claimant asks this court to reconsider the issue because of evidence presented at the administrative hearing on remand which indicated that general counsel for KPERS had informed Security Benefit that Security Benefit must notify a disability claimant of a right to a review of any suspension or termination decision. Even if true, this additional evidence does not establish the claimant's standing to challenge the provision. The claimant was ultimately provided with an administrative review of the decision to terminate his disability benefits. To the extent the contractual provision caused a delay in the claimant's hearing, his rights have been redressed within the discussion of his due process claims.

The claimant cannot articulate any independent injury arising from the enforcement of this provision against him. As previously stated by this court, the claimant lacks standing to challenge the provision. See *Lower v. Board of Dir. of Haskell County Cemetery Dist.,* 274 Kan. 735, 747, 56 P.3d 235 (2002). As a result, this claim is dismissed.

We affirm the district court's finding the claimant is not totally disabled within the meaning of K.S.A. 74-4902(32); reverse the district court's summary dismissal of the claimant's due process

claim; and remand to the hearing officer for an evidentiary hearing pertaining to the claimant's due process claim.